*269
Per Curiam.

Johnston, Ch.
It is asserted in the first ground of appeal, that certain facts, referred to in the exceptions and in the decree, were in evidence at the hearing of the report. The counsel should be aware, that at the hearing of a report, the practice is, that the Court hear no evidence but what was before the Master, and reported by him, as evidence, upon which his report is founded. I am not aware that any other evidence was offered or received, when the report in this case was heard, and no evidence, which appears to have been offered to the master, seems to establish the facts asserted.
The master did report evidence, however, very material to this ground of appeal, which the counsel has omitted in his brief. From motives of kindness, stated in the decree, I preferred to put my decision, respecting the premium for insurance, upon the absence of evidence, rather than upon the correspondence which led to the purchase of the judgment.— But, as I intimated in the decree, that correspondence, in my opinion, was conclusive of the question raised by the exceptions, both as to Mr. Campbell, and as to Martin. Starr, and Walter.
Mr. Campbell, in his first letter to the Bank, says: If the Bank of the State will accept from a purchaser, in cash, this day or to-morrow, the full amount of the above recovery, (the judgment,) and assign the same, and all the interest and demand, both in law and equity, therein, and substitute myself, as attorney and solicitor, on the. records, I am authorized to say, they shall receive the said amount in cash.
Upon the reception of this communication, the Bank “Resolved, that the proposition made to-day, by J. B. Campbell, to purchase the verdict obtained by the Bank against the Trustees of the Charleston New Theatre Company, cannot be accepted, in its present form — because there is no stipulation proposed that the mortgage to secure this shall be postponed, in its lien on the Theatre, to the mortgage held by the Bank, to secure the fire loan on the said theatre.
“Resolved, also, That in any sale or settlement of this debt, the Bank will require the purchaser to pay all insurances advanced by the Bank for the Theatre, with interest on the same, and also the payment of all costs, to which the Bank is liable, or may be made liable, in the several suits in law and equity decided or pending in regard to the Theatre, oh this debt.”
Mr. Campbell replies: “ I have received and submitted your resolutions of yesterday, .containing objections to the *270 propositions of the same date, to the parties in whose behalf the proposition was made. They understand, that by the final decee of the appeal Court of Chancery, already pronounced, the fire-loan mortgage has precedence and priority over the mortgage executed by Wotherspoon et al. bearing date May 24th 1837 : and their offer to purchase is subject to this understanding. This, I apprehend, meets your views, and removes the first objection. The insurances, to which the second resolution refers, are covered, as understood, by the express terms of the fire-loan, and are secured by the mortgage to secure that bond. It is, therefore, intended to refer the payment of premiums advanced to that security, inasmuch as it does not pass to a purchaser of the judgment, by the.assignment of the Bank. In order to facilitate the recovery of the premiums of insurance advanced by the Bank, I will waive the six months notice on the fire-loan mortgage, to which I am entitled under the Act, and every, other obstacle to prevent the Bank from pressing the fire-loan mortgage, which may exist at any time; or, I will make any other arrangement to secure or pay the premium, which shall be agreeable and satisfactory to your President. The costs, to which the resolution also refers, will be discharged by the purchase of the judgment, as proposed by the resolution. This disposes of every objection to the proposition submitted through me, and I consider the matter closed ; and payment for the purchase of the judgment will be made this morning.”
On the reception of this last letter, the Bank closed the transaction, by accepting the proposition', as modified.
I deem it unnecessary to add a single word, by way of comment, on the evident meaning of this correspondence.— The second and third grounds of appeal are, in my conception, sufficiently answered in the decree. If the Bank was to be estopped, it must be by its own deed. The proposed estoppel was-not, on its face, the deed of the Bank. If the deed of a third person was insisted on, as against the Bank, then his authority and agency must be established. As that which Mr. Campbell insisted on was not, on its face, the deed of the Bank, the burden was upon him to make it their deed, by proof of Mr. Furman’s authority. There was no such proof; -or (to meet, more explicitly, the assertion in the second ground of appeal,) there was no evidence reported by the master as having been before him, that either the Cashier or President of the Bank would be authorized to enter satisfaction.
*271 1 There is another view, less technical, .which is equally satisfactory. As the parties stood at the hearing of the case, the 1st of March, 1844, the trustees claimed the benefit of the first mortgage, for their indemnity, and it was adjudged to them by the decree subsequently delivered. The Court took time to consider of its decree, and in this interval the Bank undertook to transfer the judgment upon which the trustees were to be made personally liable, and at the same time, (if we are to attribute the entry of satisfaction to the Bank,) to deprive them of the indemnity of the mortgage. But this indemnity the trustees were as much entitled to, as the Bank was entitled to the judgment, and no man ought to suffer by the delay of the Court, while deliberating what judgment to give. (Park. R. 34.) If the Bank had retained its judgment in its own hands, it will not be pretended that it would have been at liberty to deprive the trustees of the benefit of the mortgage, and at the same time enforce the judgment against them. It would not be permitted to do this at any time, and especially after its right to do so was sub judice; and certainly the assignee of its judgment, coming in pendente lite, can stand on no better footing than the Bank itself. Neither can Mr. Campbell, who stands as the mortgagor, avail himself of any mistake to the prejudice of co-parties with himself in the same suit, whose rights were, at the time, in the custody of the Court.
The fifth and sixth grounds of appeal require no comment. The fourth ground, as it stands in the brief, is entirely too vague. But it has been explained, in argument, to mean that the order to sell for cash is in contravention of the Act of 1842, p. 237, sec. 2. This could only apply to the fire loan mortgage. But to understand the force of the objection presented, it is necessary to recur to the fire, loan Act of June, 1838, ch. 2. It is therein prescribed that loans under that Act shall be secured by bonds and mortgages, which bonds shall be payable in extended instalments, and in case of failure of the borrower to pay the instalments, with interest, the President and Directors of the said Bank shall and may, after six months’ notice to the obligor, his heirs, &c. proceed to sell the property mortgaged, by auction, for ready money, &c. This Act was amended in'certain particulars, not necessary to be noticed here, by the Act of December, 1838, ch. 8.
Then comes the Act of 1842, before referred to. The second clause of this Act provides that whenever any property, mortgaged to secure payment of any loan made pursuant to. the provision of the Acts of Assembly hereinbefore first men *272 tioned, (the Acts of June and December, 1838,) shall be sold for foreclosure of such mortgage, such sale shall not be made for cash, but only for cash as to the instalments due, and as to the residue, upon credit, corresponding to the terms of the loan — as to which residue the purchaser shall give bond and mortgage, with sureties to said bond, to be approved by commissioners, to be appointed by the President and Directors of the Bank, and by the City Council of Charleston.
But by the second section of the first clause of the same Act, it is declared that no borrower, or his legal representative or assignee, shall be entitled to the benefit of this Act, until he or they shall have given notice in writing to the President and Directors of the Bank, that he or they claim the benefit thereof, and assent to and accept all the terms and conditions thereto annexed, which assent shall be endorsed on the bond and mortgage of the said parties, &c.
It might be doubted whether the clause relating to the terms of a foreclosure sale has any application, except where the foreclosure is effected in the summary method provided for in the Act of June, 1838; and if it extends to sales ordered by other authorities, it might still be questioned whether the mortgagor is entitled to the indulgence granted by the clause referred to, unless he has complied with the conditions laid down in the second section of the first clause, of which compliance there is no evidence.
Again, it might be doubted whether Mr. Campbell, the only party now objecting, did not stipulate to waive every such objection, in the correspondence to which I have already referred.
But, be this as it may, he is precluded by the settled practice of this Court, an adherence to which is necessary to the regular administration of justice, from taking his objection in its present form.
When an appeal is taken from the Master’s judgment or report, no matter in point is to be considered by the Court which was not before the Master; and his report must stand in all particulars not excepted to.
It was referred to the Master to report what was due on the mortgage in question, and he reported — and so far as we see, without objection — that the entire mortgage debts were due. It does not appear to have been made a point before him that any portion was not due. It was certainly competent for the party now objecting to waive any objection to which he was entitled. He put in no exception, and how was the Court to know, or conjecture, without any point *273 being made before it, that the report was not correct 1 It was hound to assume its correctness. The decree was itself correct, upon that assumption. And we see no sufficient reason for going behind the report, (even if at liberty to do so,) in order to set aside a decree, the error of which, (if erroneous,) is owing to the laches of the party complaining.
It is ordered that the decree be affirmed: and it is further ordered that unless the defendant, James B. Campbell, shall, within thirty days from the filing of this decree, pay off the sums found due in the report of the Master, referred to in the decree, for principal, interest and insurance, the said decree, in all its provisions and directions, be carried into effect, and executed. It -is further ordered that the appeal be dismissed.

Decree affirmed.